```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Scott D. Louderback,              :

     Plaintiff,              :

  v.                              :        Case No. 2:13-cv-724

                                        :        JUDGE MICHAEL H. WATSON
Commissioner of Social Security,           Magistrate Judge Kemp
                                        :

     Defendant.

## REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, Scott D. Louderback, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on October 27, 2009, and alleged that Plaintiff became disabled on October 16, 2009.

After initial administrative denials of his applications, Plaintiff was given a videoconference hearing before an Administrative Law Judge on February 13, 2012.  In a decision dated April 13, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on June 27, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on September 30, 2013.  Plaintiff filed his statement of specific errors on December 4, 2013, to which the Commissioner responded on March 5, 2014.  No reply brief has been filed, and the case is now ready to decide.

### II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 30 years old at the time of the administrative hearings and had a twelfth grade education,

testified as follows. His testimony appears at pages 35-47 of the administrative record.

Plaintiff was, at the time of the hearing, working part time with a pizza restaurant. His job consisted of running dough through a machine to flatten it. The last time he worked full-time was in either 2009 or 2010, when he was a restaurant cook.

Plaintiff testified that his heart condition and associated shortness of breath was his biggest problem. It had caused his current employer to cut his hours from full-time to ten hours per week. He began having heart problems while still in high school, and has had a pacemaker implanted. He would become short of breath and dizzy, and took nitroglycerin once or twice a week for chest pain.

The shift which Plaintiff was working was four hours. He needed to take a half hour break during his shift, and often left work early. Once a week he experienced an increased heart rate as well. If he did leave work early, he went home, rested, and elevated his feet, based on the advice of his cardiologist. If he does not keep his feet elevated, he develops severe leg and foot pain.

In 2010, Plaintiff was diagnosed with diabetes. His blood sugar level often exceeded 600. That has caused him difficulty when trying to lose weight (he weighed 390 pounds on the date of the hearing). He also suffered from asthma and used an inhaler on a daily basis. Lifting or heat caused him to become short of breath.

On a daily basis, when not at work, Plaintiff spent most of his time watching television. He could do some household chores but a relative helped with those.

### III. The Medical Records

The medical records in this case are found beginning on page 234 of the administrative record. The pertinent records - those

relating to the claims he raises in his Statement of Specific Errors - can be summarized as follows.

Plaintiff went to the emergency department of Holzer Medical Center on March 25, 2009, complaining of chest pain. He had become ill at work. The impression was chest pain, morbid obesity, and sleep apnea. He was admitted to telemetry for observation. The ER notes show a history of myocardial infarction. (Tr. 253-65). Subsequent records show a number of other emergency room visits for chest pain without any specific diagnosis, as well as a visit where pneumonia was diagnosed following an episode where Plaintiff coughed up some blood.

The record contains a large number of treating notes from Plaintiff's cardiologists. The first set, covering the years from 2004 to 2009, show that Plaintiff received a pacemaker in 2004 to address bradycardia and intermittent heart blocks; that a heart catheterization performed in 2008 following a diagnosis of unstable angina yielded normal results; that an echocardiogram done the same year did not show any significant abnormalities; and that Plaintiff continued to report chest pain and shortness of breath throughout 2008. In October, 2009, Dr. Velury reported that Plaintiff's coronary artery disease was stable and he released Plaintiff to return to work. (Tr. 266-323). A second set is largely duplicative. (Tr. 324-72).

Dr. McCloud, a state agency reviewer, completed a physical capacity function report on March 30, 2010. He listed Plaintiff's diagnoses as asthma and hemoplysia. Dr. McCloud thought Plaintiff could do medium work but should avoid even moderate exposure to extreme heat or cold, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery or heights. (Tr. 507-14). That opinion was later affirmed by another state agency reviewer, Dr. Bolz (tr. 594).

Plaintiff underwent another heart catheterization in August,

-3-

2010. It showed moderate diffuse disease of a very small diagonal artery but was otherwise normal. (Tr. 528-29).

Dr. Velury filled out a cardiac residual functional capacity questionnaire on April 29, 2011. In his opinion, Plaintiff exhibited shortness of breath, fatigue, weakness, and dizziness, but was capable of low stress jobs. However, his cardiac symptoms would frequently interfere with his attention and concentration and he could not sit for more than one hour at a time or stand for more than 45 minutes at a time. Also, he would need a job which allowed him to alternate at will between sitting and standing and he would have to take unscheduled breaks every two to three hours. Also, with prolonged sitting, Plaintiff would have to elevate his legs above heart level for 75% of the day, he would have environmental and postural restrictions, and he would miss about four days of work per month. (Tr. 612-17).

IV. The Vocational Testimony

Ms. Julie Vick was the vocational expert in this case. Her testimony appears at pages 48-53 of the administrative record.

Ms. Vick testified that Plaintiff had worked as a fast food worker, a skilled, light job. His job as a retail associate was unskilled and medium. He had no other past relevant work.

The ALJ asked Ms. Vick questions about a hypothetical person who could work at the sedentary exertional level but could only walk one block at a time. The person could not climb ladders, and could only occasionally climb stairs, stoop, balance, kneel, and crawl. He could also not be exposed to hazards such as heights or moving parts, and could tolerate only occasional exposure to extremes of heat and cold. Finally, the person could do only simple, repetitive tasks to reduce heart stress. According to Ms. Vick, someone with those restrictions could not perform Plaintiff's past relevant work but could perform sedentary unskilled jobs such as ticket checker, document

preparer, or addresser. Ms. Vick identified the number of such jobs in the Ohio and national economies (about 1,300 in Ohio and about 83,000 nationally). Those jobs could be done by someone who had to elevate their feet twelve inches off the floor for 25% of the workday.

      V.   <u>The Administrative Law Judge's Decision</u>

   The Administrative Law Judge's decision appears at pages 13-22 of the administrative record. The important findings in that decision are as follows.

   The Administrative Law Judge found, first, that Plaintiff met the insured requirements for disability benefits through December 31, 2014. Next, Plaintiff had not engaged in substantial gainful activity from October 16, 2009 forward. As far as Plaintiff's impairments are concerned, the ALJ found that Plaintiff had severe impairments including coronary artery disease status post pacemaker implant and diabetes mellitus - type II. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

   Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the sedentary exertional level except he could not walk for more than one block at a time, could never climb ladders, and could occasionally climb stairs, balance, stoop, kneel, and crouch. Additionally, he was limited to simple, routine unskilled tasks and could have only occasional exposure to cold or hot extremes and no exposure to hazards like heights or moving parts. The ALJ found that, with these restrictions, Plaintiff could not perform his past relevant work, but he could perform the jobs identified by Ms. Vick - specifically ticket checker, document preparer, and addresser -

and that such jobs existed in significant numbers in the Ohio and national economies. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred by not giving either controlling weight or great weight to the opinion of the treating source, Dr. Velury; and (2) the ALJ's residual functional capacity finding was not supported by substantial evidence. The Court analyzes these claims under the following standard.

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is

supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. Dr. Velury's Opinion

In every case where one of the issues is the ALJ's weighing of the treating source opinion, the Court begins with a detailed discussion of the ALJ's reasoning process. This is what the ALJ concluded about Dr. Velury's opinion.

Before reaching that opinion, the ALJ commented on the objective evidence about Plaintiff's heart condition, noting that his heart appeared normal on a 2008 chest x-ray, that an echocardiogram from 2010 showed a left ventricular ejection fraction of 40-45%, that the subsequent catheterization demonstrated blockage only in one small artery, and that it also showed normal left ventricular function. (Tr. 18-19). The ALJ found that these test results did not limit Plaintiff to less than sedentary work. He also noted that after Plaintiff's pacemaker battery was replaced in 2010, he did not frequently complain of shortness of breath, and he did not have any follow-up appointments with Dr. Velury. (Tr. 19). The ALJ commented, at Tr. 20, that Plaintiff's activities also showed he could do sedentary work, because he was actually performing light work in a hot environment, although on a part-time basis, and was able to do household chores, prepare meals, and shop independently.

The ALJ then engaged in a specific discussion of Dr. Velury's April, 2011 opinion. He declined to give it significant weight because

> it is inconsistent with the claimant's pattern of treatment. Over the course of treatment by the cardiologist, the cardiologist never made a limitation on the claimant's ability to sit or stand, or required an elevation of feet, which is an integral part of this opinion. There is no mention of any functional limitations consistent with the severity discussed in this opinion. In addition, it is inconsistent with the claimant's own reported activities of daily living.

-7-

(Tr. 20). The ALJ did, however, credit Dr. Velury's opinion with respect to lifting and walking limitations and concerning Plaintiff's inability to deal with significant work stress.

According to Plaintiff, this analysis is flawed because he did receive treatment for his heart condition (a pacemaker, two catheterizations, and medication) and because it fails to take into account the possibility that Dr. Velury's notes were not as comprehensive as his observations or instructions to Plaintiff. He also argues that his ability to do household tasks comes and goes with his good and bad days and that he has help with some of them. Next, he notes that he struggles with his part time job and has to leave early at least one day per week. Finally, he points to his long-term treating relationship with Dr. Velury, to the support provided by Dr. Velury, and his training in cardiology, all of which are factors which should be accounted for in the evaluation of a treating source opinion.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the

weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Here, Plaintiff has not argued that the ALJ failed to provide an adequate explanation for his findings concerning Dr. Velury's opinion, so the only issue is whether the reasons he gave - the scarcity of any mention in the treatment notes about severe limitations, the essentially normal studies and findings, and Plaintiff's ability to do part-time work at the light exertional level and to do simple household tasks on at least an occasional basis - are the types of reasons which can legitimately be cited in support of a decision not to give either controlling or great weight to a treating source opinion.

In fact, the reasons given by the ALJ here, which focus appropriately on the regulatory issues of supportability of the opinion (see 20 C.F.R. §404.1527(c)(3)) and consistency of the opinion with the record as a whole (§404.1527(c)(4)), are valid bases on which to reject a treating source opinion. The courts have consistently held that treating source opinions which are contradicted by, or unsupported by, the source's own notes and the results of testing "with relatively normal results" can properly be accorded only slight weight, See Moore v. Colvin, 2014 WL 1010586, *9 (E.D. Va. March 13, 2014). This Court has held that a treating source opinion which is "out of proportion to the objective findings" may be substantially discounted. Armstrong v. Astrue, 2012 WL 380131, *7 (S.D. Ohio Feb. 6, 2012), adopted and affirmed 2012 WL 1806137 (S.D. Ohio May 17, 2012).

Additionally, the ability to do part-time work may provide a basis for a finding that a claimant can do even more, if the

-9-

record supports that finding. See, e.g., Torres v. Comm'r of Social Sec., 490 Fed.Appx. 748 (6th Cir. July 31, 2012). That is especially true where, as here, the part-time job is being performed at a greater exertional level, and when there is little evidence that the extreme limitations imposed by Dr. Velury were actually being observed by Plaintiff as he did his part-time job. Consequently, the Court concludes that the ALJ provided valid reasons, supported by the record, for giving little weight to the more extreme portions of Dr. Velury's opinion.

        B.   The Residual Functional Capacity Finding

Plaintiff's other argument is that the ALJ's residual functional capacity finding is not supported by substantial evidence. That is so, Plaintiff contends, because the medical evidence supports a more restrictive residual functional capacity (although he does not specify what that capacity is); because Plaintiff's ability to do housework on an occasional basis suggests greater limitations than those found by the ALJ; and because the only current assessment of Plaintiff's abilities came from Dr. Velury, whose opinion, Plaintiff continues to argue, should have been given greater weight by the ALJ.

None of these arguments is sufficient to undermine the validity of the ALJ's decision. Even if it were true that the totality of the medical evidence - which, as to the key issue of Plaintiff's heart condition, consisted primarily of normal findings, mild results on tests, and little indication of limitations - supported a more restrictive RFC, the issue in this type of case is not whether a different finding would be consistent with the record, but whether the ALJ's actual finding is inconsistent with the evidence. "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001).

The same is true with respect to the evidence about Plaintiff's activities of daily living. Plaintiff omits any reference to the fact that, in addition to the performance of household chores on an occasional basis - something which provides support for a finding that he is not as limited as either he or Dr. Velury claimed, although it is not definitive on that point - he was doing a part-time, light exertional level job four or five days a week. The ability to do basic household chores and to engage in part-time work is something an ALJ is entitled to consider in arriving at a residual functional capacity determination, especially when concluding that a claimant can do sedentary work. See, e.g., Cunningham v. Astrue, 360 Fed.Appx. 606, 613-14 (6th Cir. Jan. 5, 2010). Finally, the ALJ did not give significant weight to the relatively outdated state agency reviewers' opinions, noting that they were over two years old and that the later evidence supported a more restrictive RFC. Rather, the ALJ took Plaintiff's testimony into account and credited some portions of Dr. Velury's opinion in crafting an RFC for low-stress sedentary work. Nothing about that process suggests that the ALJ improperly relied on outdated information or that he mischaracterized the evidence of record. Consequently, Plaintiff's second argument also provides no basis for either a reversal of the ALJ's decision or a remand for further proceedings.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner of Social Security.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge